316. Defendant Chartrand was not only deliberately indifferent to the violation of the Plaintiff's constitutional rights by John Doe2 and John Doe1, Chartrand actually participated in and took positive action against the Plaintiff when he prevented the Plaintiff from continuing with the DPD as a detective after being dismissed from his position as a member of the CBI unit, and demoting him to that of patrol officer.

317. That is, Defendant Chartrand resolved the turmoil that was being created by the individuals who were retaliating against the Plaintiff for exercising his constitutionally protected rights by demoting that innocent person (the Plaintiff) and appeasing the constitutional violators (John Doe1 and 2).

318. This inaction AND action by Defendant Chartrand directly and proximately caused the constitutional violation of the Plaintiff's free speech rights and is actionable under 42 U.S.C. § 1983.

### Defendant John Doe1

319. Defendant John Doe1 retaliated against the Plaintiff because the Plaintiff revealed information provided by CS which implicated John Doe1 and his friend and co-worker, DO3 (another officer within the Dracut Police Department) in corruption and illegal activity.

320. The retaliation was for the purpose of punishing the Plaintiff and inhibiting his federal and state constitutional rights to speak as a citizen on matters of public concern and such retaliation did in fact cause a violation of the Plaintiff's constitutional rights.

321. Defendant John Doe1 has power and control within the detective unit of the DPD.

322. Defendant John Doe1 has influence over decision making within the DPD and has influence over decision making by Defendant Chartrand.

323. Defendant John Doe1 made it clear to Defendant Chartrand that he (John Doe1) did not want Detective Jakuttis returning to the detective division of the DPD.

324. Defendant John Doe1 prevented the Plaintiff or caused the prevention of the Plaintiff from returning to the detective division of the DPD by his direct influence on Defendant Chartrand and his (Doe1's) demands that the Plaintiff not continue as a detective.

325. Defendant John Doe1 continued to retaliate against the Plaintiff while the Plaintiff is currently out on disability by participating in a concerted action between John Doe1, John Doe2, and DO3 by intimidating and threatening a friend[18] of the Plaintiff so that the friend would not associate with the Plaintiff.

326. Defendant John Doe1 also retaliated against the Plaintiff for exercising his free speech rights by intentionally lying to the Chief of Police regarding the condition of a vehicle that John Doe1 was making available for the Plaintiff to use, telling the Chief that the vehicle was in "good shape" while in fact the vehicle reeked of urine, had a family of field mice living in the interior of the vehicle and had a myriad of other problems and was generally unsafe to drive.

327. The actions of the Defendant John Doe1 directly and proximately caused a violation of the Plaintiff's constitutional free speech rights and are actionable under 42 U.S.C., § 1983.

328. The constitutional rights of the Plaintiff were clearly established and all reasonable persons standing in the place of the Defendants would have known that their actions were a violation of those clearly established rights.

### Harm Suffered

329. By the acts and means alleged above, and in furtherance of the Defendants' purpose of suppressing the Plaintiff's federally protected free speech rights, the Defendants have

---

[18] John Doe1 is a supervisor of this friend of the Plaintiff and his harassment would have an even greater effect on the friend because of that supervisory relationship.

intentionally, maliciously, wantonly, willfully, and with bad faith, proximately and actually

caused the Plaintiff actual harm, including, but not limited to, the deprivation of constitutional

rights, severe emotional distress, economic loss, lost wages, past and future, depression, stress,

anxiety, headaches, bruxism, insomnia, high blood pressure, post-traumatic stress disorder,

feeling of helplessness, hopelessness, sadness, loss of appetite, loss of interest in relations with

his wife, loss of libido, loss in ability to engage in relations as he had in the past with his wife

when the interest is there, because of the emotional and physical harm caused by the

Defendants.

**WHEREFORE, the Plaintiff demands:**

a. That judgment be entered in favor of the Plaintiff against all Defendants.
b. That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
c. That the Plaintiff be awarded punitive damages against the Defendants in their individual capacities.
d. That the Plaintiff be awarded attorney's fees and costs of this litigation in accordance with 42 U.S.C. § 1988.
e. That the Defendants' actions be declared unconstitutional and that Defendant Chartrand be permanently enjoined from violating the Plaintiff's constitutional rights.
f. Any other relief the court deems just and proper.


### COUNT II
### M.G.L. c. 12, § 11H and 11I – State Civil Rights Violation
### (Plaintiff Joseph J. Against All Defendants EXCLUDING Town of Dracut)

330. The Plaintiff reasserts and re-alleges the allegations in paragraphs 1 through 329 above,

inclusive, and incorporate the same herein by reference as if fully set forth in this paragraph.

331. The Plaintiff, Joseph Jakuttis, was exercising and enjoying his rights secured by the laws and

constitutions of the United States and the Commonwealth of Massachusetts, to wit, his rights of

free speech under said constitutions.

332. By the acts and means alleged above all the Defendants (excluding the Town of Dracut) have interfered or attempted to interfere with the Plaintiff's exercise and enjoyment of such rights and privileges.

333. Such interference or attempted interference by the Defendants, was by way of threats, intimidation or coercion, as described in the previous paragraphs in this Complaint.

334. State action is not required for liability under M.G.L. c. 12, §§ 11H and 11I (the Massachusetts Civil Rights Act – MCRA), and as such, the fact that Defendant O'Hanlon is a federal agent is of no consequence for purposes of the MCRA.

335. The actions of Defendants Chartrand and O'Hanlon are actionable under the MCRA because, among other reasons, they acquiesced to the threats of Defendants John Doe2 and John Doe1, respectively.

336. Even if there was no desire on the part of Defendants Chartrand and O'Hanlon to interfere with the rights of the Plaintiff (which the Plaintiff contends they did intend such), liability still attaches under the MCRA because Defendant Chartrand acquiesced to the desires, threats, intimidations and coercions of Defendants John Doe1 and John Doe2 to interfere with the rights of the Plaintiff, and O'Hanlon acquiesced to the desires, threats, intimidation and coercions of Defendant John Doe2 to interfere with the rights of the Plaintiff. See, Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93, 98-101 (1987).

337. The constitutional rights of the Plaintiff were clearly established and all reasonable persons standing in the place of the Defendants would have known that their actions were a violation of those clearly established rights.

338. The Plaintiff had a contract, as a beneficiary, with the DEA to work as a CBI officer.

339. Defendant O'Hanlon's discharge of the Plaintiff from his position as a CBI officer had an effect of coercing him not to exercise his First Amendment and Article 16 rights of free speech and was, therefore, a violation of the MCRA. See Broderick v. Roache, 803 F. Supp. 480, 466 (D. Mass., 1992) (discussing Redgrave at 95 ("In Redgrave, the court held that the BSO's cancellation of its contract with Redgrave, which had the effect of coercing her not to exercise her First Amendment rights, violated MCRA.").

340. Physical confrontation is not a required element of a claim under the MCRA. See Broderick. at 466-467.

341. Defendant Chartrand had the power and authority to demote Plaintiff Jakuttis and to prevent him from continuing as a detective within the DPD, but that power and authority was unlawfully exercised.

342. Defendant Chartrand's demotion of Plaintiff Jakuttis and preventing him from continuing as a detective is comparable to and the equivalent of cancellation of a contract as far as meeting the definition of coercion to prevent the Plaintiff from exercising his free speech rights and is legally sufficient for a violation of the MCRA under the same theory as the claim in the preceding two paragraphs against Defendant O'Hanlon.

343. By the acts and means alleged above, the Defendants have caused harm to the Plaintiff in both his person and his property (his employment), as more fully described in paragraph 329 above, said paragraph incorporated herein as if fully set forth in this paragraph.

**WHEREFORE, the Plaintiff demands:**
a.      That judgment be entered in favor of the Plaintiff against the Defendants.
b.      That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
c.      That the Plaintiff be awarded attorney's fees and costs of this litigation.
d.      Any other relief the court deems just and proper.

## COUNT III
## M.G.L. c. 149, § 185 (Whistleblower Statute)
## (Plaintiff J. Jakuttis Against Town of Dracut Only)

344. The Plaintiff reasserts and re-alleges the allegations contained in paragraphs 1 to 343 above, inclusive, and incorporate the same herein by reference as if fully set forth herein.

345. By the acts and means alleged above, the Defendant, Town of Dracut, has violated the Plaintiff's rights under M.G.L. c. 149, § 185 (hereafter "Section 185") because the Plaintiff was engaged in protected activity under Section 185, and engaging in such activity was a motivating or substantial factor in the Defendant taking retaliatory, adverse action against the Plaintiff which resulted in harm to the Plaintiff.

346. At all times material to this Complaint the Plaintiff, Joseph Jakuttis, was an "employee," as that term is used in Section 185 (a)(1), of the Defendant, Town of Dracut.

347. At all times material to this Complaint the Defendant, Town of Dracut, was an "employer," as that term is used in Section 185 (a)(2), and was the employer of the Plaintiff, Joseph Jakuttis.

348. M.G.L. c. 149 § 185(a)(3(D) defines a "public body" as, among other things, "any federal, state or local law enforcement agency, prosecutorial office, or police or peace officer. . ."

349. At all times material to this Complaint the CBI unit of the DEA and the DEA were and are a "public body," as that term is used in Section 185 (a)(3)(D).

350. At all times material to this Complaint, Defendant John Doe2 was and is a "public body," as that term is used in Section 185 (a)(3)(D).

351. At all times material to this Complaint, Defendant O'Hanlon was and is a "public body," as that term is used in Section 185 (a)(3)(D).

352. At all times material to this Complaint, Defendant Chartrand was and is a "public body," as that term is used in Section 185 (a)(3)(D).

353. Defendant Chartrand was and is a "supervisor," as that term is used in Section 185 (a)(4).

354. By the acts and means alleged above, the Defendant, Town of Dracut, took "retaliatory action" against the Plaintiff, as that term is used in Section 185 (a)(5).

355. The retaliatory action against the Plaintiff was (a) Defendant Chartrand allowing and/or tolerating the harassment, threats, intimidation, and coercion against the Plaintiff by Defendants John Doe1 and John Doe2 and DO3; (b) Defendant John Doe1 influencing and telling Defendant Chartrand that he (John Doe1) did not want the Plaintiff on the DPD as a detective after the Plaintiff was removed from the CBI; (c) Defendant Chartrand agreeing and making the decision not to allow the Plaintiff to return as a detective; (d) Defendant Chartrand demoting the Plaintiff to patrolman or not allowing him to continue as a detective after he was removed from the CBI.

356. The retaliatory action was a demotion and was also adverse employment action as to the terms and conditions of employment.

357. The reason for the retaliatory action taken against the Plaintiff was because of his (a) "disclosure of activity" to a public body and supervisor which the Plaintiff reasonably believed to be a violation of law, rule or regulation promulgated pursuant to law, and which he reasonably believes poses a risk to public safety [Section 185 (b)(1)]; (b) for "providing information" to a public body conducting an investigation or inquiry into the violation of law, rule or regulation promulgated pursuant to law, or activity which the Plaintiff reasonably believes poses a risk to public safety [Section 185 (b)(2)]; and (c) "objecting to activity" which the Plaintiff reasonable believes to be a violation of law, or rule or regulation promulgated pursuant to law, and which the Plaintiff reasonably believes poses a risk to public safety [Section 185 (b)(3)]. The "activity" and "information" disclosed and provided as stated above is

the alleged illegal narcotic and controlled substance activity of John Doe1 and DO3 revealed by CS.

358. The Plaintiff disclosed the information and activity to a public body, to wit, the CBI unit of the DEA through Defendant John Doe2, Defendant O'Hanlon and Officer Willoughby on February 2, 2015, which was an investigation or inquiry into a violation of law.

359. The disclosure was also made to the Plaintiff's "supervisor," Defendant Chartrand, on or shortly after February 18, 2015, after the formal interview of CS at the CBI office in Lowell.

360. The disclosure to the "supervisor," Defendant Chartrand, was not made by the Plaintiff in writing, directly, because (a) the Plaintiff reasonably feared physical harm as a result of the disclosure, and (b) the disclosure was made to a public body as defined in Section 185 (a)(3)(D), to wit, the CBI unit, the DEA, Defendant John Doe2, Defendant O'Hanlon, and Special Agent Willoughby, as mentioned *supra*, for the purpose of providing evidence of what the Plaintiff reasonably believed to be a crime, to wit, the allegations against Defendant John Doe1 and DO3, and, therefore these reasons qualify for the exception to the written notification requirement of Section 185 (b)(1). See M.G.L. c.149, § 185 (c)(2), subsections (B) and (C) respectively. There is no written notice requirement under Section 185 (b) (2) or (3).

361. The reasonable fear of harm if the disclosure was in writing is in the sense that disclosing the information to the CBI and DEA was itself invoking fear in the Plaintiff of physical harm because of the nature of the allegations and the fact that the people whom the allegations were made against were people who owned firearms (they were police officers) and who apparently had relationships with unsavory and potentially dangerous persons (criminals) which was a relationship beyond a professional undercover relationship. The Plaintiff saw performing his civic and moral duty of revealing the information to the CBI unit as being advanced by verbally

relaying the information he received from CS and letting the federal agency proceed from there, with his availability to provide additional information, such as the veracity of CS and the reliability of his past information, and that if he himself drafted any documentation on the allegations rather than letting the DEA handle it, that it would enrage those being accused even more and increase the risk of some kind of physical retaliation.

362. The Plaintiff, however, did not realize the full scope of the relationship between Defendant John Doe2 and John Doe1 and DO3 in that he didn't realize the friendship between those three would transcend Defendant John Doe2's duty to society and his responsibility as a law enforcement officer.

363. Since seeing the retaliatory actions of Defendant John Doe2, the Plaintiff now actually fears for physical retaliation by not only John Doe1 and DO3, but from Defendant John Doe2 also.

364. This fear is reasonable given the nature of the alleged criminal activities of John Doe1 and DO3 and the alleged relationship with criminals and the rage and aggression Defendant John Doe2 has expressed and shown toward the Plaintiff.

365. That the fear is reasonable is buttressed by the fact that when terminating the CBI contract with the Plaintiff, Defendant O'Hanlon said that he had "no idea what he's [referring to John Doe2] capable of."

366. Adding to this fear is information that the Plaintiff received that CS has had unknown individuals possessing badges place a gun in his mouth telling him not to "rat" on cops.

367. Notwithstanding the fact that the Plaintiff himself did not generate a written notice to his "supervisor," a written report was generated at the CBI unit based on the information revealed by the Plaintiff and that written report was given to Chartrand (the Plaintiff's "supervisor").

368. This report was generated by John Doe2 following the information provided by the Plaintiff, and was generated from the information CS reiterated at his formal interview, and the report given to Chartrand is, therefore, constructive written notice by the Plaintiff and should deemed written notice by the Plaintiff, although such written notice is not required for the reasons stated above (because the disclosure was for the purpose of providing what the Plaintiff reasonably believed to be evidence of a crime and because the Plaintiff reasonably feared physical harm).

369. The disclosure was of an activity which the Plaintiff reasonable believed was a violation of law and which posed a threat or risk to public safety.

370. The meetings within the CBI regarding the information from CS which the Plaintiff disclosed was an "investigation" or "inquiry" for purposes of Section 185 (b)(2), and such investigation or inquiry was into a violation of law and/or an activity which poses a risk to public safety.

371. The action that the Plaintiff took in disclosing the information provided by CS is an "objection" to activity which the Plaintiff reasonably believed to be a violation of law and/or a risk to public safety.

372. If the Plaintiff didn't object to such activity mentioned in the paragraph above, he would not have revealed the information that CS provided to him. It was the fact that he objects to such activity that he revealed the information provided.

373. By the acts and means alleged above, the Defendant has caused harm to the Plaintiff in both his person and his property (his employment), as more fully described in paragraph 329 above, said paragraph incorporated herein as if fully set forth in this paragraph.

**WHEREFORE, the Plaintiff demands:**

a. That judgment be entered in favor of the Plaintiff against the Defendant.
b. That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
c. That the Plaintiff be compensated for three times the amount of lost wages, benefits and other remuneration, and interest thereon, as allowed under Section 185.
d. That the Plaintiff be awarded punitive damages against the Defendant in an amount to be determined by the jury.
e. That the Plaintiff be awarded attorney's fees and costs of this litigation.
f. Any other relief the court deems just and proper.

## COUNT IV – Intentional Interference with Advantageous Economic Relationship (Plaintiff J. Jakuttis v. Chartrand, Doe1 and Doe2)

374. The Plaintiff reasserts and re-alleges the allegations contained in Paragraphs 1-373 above,

inclusive, and incorporate the same herein by reference as if fully set forth herein.

375. The Plaintiff had an advantageous business and/or economic relationship with the DPD by way

of his employment with the Town of Dracut, Police Department.

376. Defendant John Doe1, John Doe2, and Chartrand (the three collectively referred to as the

"Defendants" for purposes of this Count IV) all knew of the advantageous business and/or

economic relationship between the Plaintiff and the Town of Dracut.

377. The Defendants, with deliberate indifference, malice and otherwise improper in motive or

means, did intentionally interfere with the Plaintiff's advantageous relationship with the Town

of Dracut which resulted in economic and emotional harm to the Plaintiff.

378. The deliberate indifference, malice and improper motive or means was because the purpose of

interfering with the relationship was silencing the Plaintiff and unlawfully inhibiting his free

speech and to punish him and retaliate against him for the exercise of such speech by preventing

him from continuing as a detective with the DPD and having him demoted to patrolman, with

knowledge that his position as a detective in the DPD was socially, personally, and

economically of value to him, but with no concern whatsoever of the harm that the Plaintiff would suffer by such interference.

379. Chartrand in his own right interfered with the relationship by refusing to allow the Plaintiff to return as a detective to the DPD, and demoting him to patrolman, but even if his actions were at the demanding or urging of John Doe1, and Chartrand acquiesced to such urging or demand, such acquiescence is tantamount to action attributable directly to Chartrand.

380. Defendant Chartrand's actions in causing the interference with the Plaintiff's advantageous relationship was done malevolently, that is, for a spiteful, malignant purpose, unrelated to the legitimate interest of the DPD.

381. John Doe1 interfered with the relationship by making it clear to Defendant Chartrand that Doe1 didn't want the Plaintiff back on the detective unit, and Doe1 had such influence over or friendship with Chartrand that he knew that if he protested to Chartrand that Chartrand would not bring the Plaintiff back to the detective unit and the only place left for him would be patrolman.

382. John Doe2 interfered with the relationship by concerting with John Doe1 to retaliate against the Plaintiff for exercising his free speech rights, informing John Doe1 about the allegations CS revealed knowing that John Doe1 would somehow retaliate by interfering with the Plaintiff's job at the DPD.

383. By the acts and means alleged above, the Defendants have caused harm to the Plaintiff in both his person and his property (his employment), as more fully described in paragraph 329 above, said paragraph incorporated herein as if fully set forth in this paragraph.

**WHEREFORE, the Plaintiff demands:**

a. That judgment be entered in favor of the Plaintiff against the Defendants.
b. That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
c. That the Plaintiff be awarded punitive damages against the Defendants in their individual capacities.
d. That the Plaintiff be awarded attorney's fees and costs of this litigation.
e. Any other relief the court deems just and proper.

## COUNT V – Intentional Interference with Contractual Relationship/and or Advantageous Relationship
### (Plaintiff J. Jakuttis v. O'Hanlon and John Doe2)

384. The Plaintiff reasserts and re-alleges the allegations contained in Paragraphs 1-383 above, inclusive, and incorporate the same herein by reference as if fully set forth herein.

385. The Plaintiff had a contractual relationship with the DEA by way of a contract between the DEA, the Town of Dracut through the Police Department, and the Plaintiff (as a beneficiary of that contract for his employment as a member of the CBI unit of the DEA), or, alternatively, had an advantageous business or economic relation with the DEA.

386. Defendants O'Hanlon and John Doe2 knew of the contractual relationship between the Plaintiff and the DEA or the advantageous business or economic relationship.

387. Defendants O'Hanlon and Doe2 caused the contract or relationship with the DEA to be broken.

388. The Contract or advantageous relationship was not with Defendant O'Hanlon or John Doe2; it was with the DEA.

389. Defendant John Doe2 caused the contract or relationship to be broken by his hostility, threatening manner, intimidation, coercion, harassment, and pressure placed on Defendant O'Hanlon to cause the contract or relationship to be broken.

390. Defendant O'Hanlon caused the contract or relationship to be broken by informing the Plaintiff that he could no longer work at the CBI, and regardless of whether or not O'Hanlon capitulated to and acquiesced to the demands, wishes and pressure of John Doe2, O'Hanlon in his own right is responsible, jointly and severally with John Doe2, for the contract or relationship being broken.

391. Defendant O'Hanlon's actions in causing the breach of contract or interference with advantageous relationship was done malevolently, that is, for a spiteful, malignant purpose, unrelated to the legitimate interest of the DEA.

392. Causing the contract or relationship to be broken was done with deliberate indifference, malice and otherwise improper in motive or means which resulted in economic harm to the Plaintiff.

393. The deliberate indifference, malice and improper motive or means was because the purpose of interfering with the contract or relationship was silencing the Plaintiff and unlawfully inhibiting his free speech and to punish him and retaliate against him for the exercise of such speech by preventing him from continuing as a task force officer/detective with the CBI, knowing that his position as a detective with CBI was socially, personally, and economically of value to him, but with no concern whatsoever of the harm that the Plaintiff would suffer by such interference

394. By the acts and means alleged above, the Defendants have caused harm to the Plaintiff in both his person and his property (his employment), as more fully described in paragraph 329 above, said paragraph incorporated herein as if fully set forth in this paragraph.

**WHEREFORE, the Plaintiff demands:**
a.  That judgment be entered in favor of the Plaintiff against all Defendants.
b.  That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
c.  That the Plaintiff be awarded punitive damages against the Defendants in their individual capacities.
d.  That the Plaintiff be awarded attorney's fees and costs of this litigation.
e.  Any other relief the court deems just and proper.

## COUNT VI – Intentional Infliction of Emotional Distress
## (Plaintiff J. Jakuttis v. All Defendants EXCLUDING Town of Dracut)

395. The Plaintiff reasserts and re-alleges the allegations contained in Paragraphs 1-394 above, inclusive, and incorporate the same herein by reference as if fully set forth herein.

396. By the acts and means alleged above, the Defendants have intentionally inflicted severe emotional distress upon the Plaintiff by actions that are extreme and outrageous and beyond all bounds of decency in a civilized society, and which no reasonable person could be expected to endure.

397. By the acts and means alleged above, the Defendants have caused harm to the Plaintiff in both his person and his property (his employment), as more fully described in paragraph 329 above, said paragraph incorporated herein as if fully set forth in this paragraph.

**WHEREFORE, the Plaintiff demands:**

a. That judgment be entered in favor of the Plaintiff against all Defendants.
b. That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
c. That the Plaintiff be awarded punitive damages against the Defendants in their individual capacities.
d. That the Plaintiff be awarded attorney's fees and costs of this litigation.
e. Any other relief the court deems just and proper.

## COUNT VII – Civil Conspiracy
## (Plaintiff J. Jakuttis v. All Defendants EXCLUDING Town of Dracut)

398. The Plaintiff reasserts and re-alleges the allegations contained in Paragraphs 1-397 above, inclusive, and incorporate the same herein by reference as if fully set forth herein.

399. The Defendants (except for the Town of Dracut) had a common design or agreement, either express or implied, to commit a wrongful act against the Plaintiff, and engaged in tortious activity in furtherance of the agreement or design.

400. The common design or agreement does not have to be an express agreement or design.

401. The common design or agreement was to retaliate against the Plaintiff by harassment, intimidation, threat and other means in order to silence him and punish him for exposing the alleged illegal conduct of John Doe1 and DO3.

402. Evidence of the design or agreement is the combination of complaints by John Doe1 to Defendant Chartrand and John Doe2 to Defendant O'Hanlon and the resulting prevention of the Plaintiff from continuing as a detective for the DPD and removal from the CBI unit of the DEA, all of which support the allegation of common design and agreement.

403. Chartrand, in demoting the Plaintiff and refusing to let him be a detective, said that "[John Doe1] doesn't want you there," and "I can't kick sand in his face." This is evidence of an agreement to retaliate and, thus, interfere with an advantageous relationship which is an intentional tortious act.

404. O'Hanlon, in removing the Plaintiff from the CBI unit, said that "it's just not working out" and discussed the turmoil between the Plaintiff and John Doe2, and said "you're just a victim of circumstances but something has to be done," and that "[John Doe2] has to be treated with kid gloves, I don't know what [he's] capable of," and "you can call me an asshole if you want to." In addition to this, the Plaintiff was told by O'Hanlon that it had nothing to do with his job performance and that the Plaintiff's work ethic and productivity was "outstanding and excellent." Furthermore, the hostility by John Doe2 toward the Plaintiff and the deterioration in his relationship with the Plaintiff did not start until the Plaintiff revealed the information from

CS regarding the alleged illegal activity of John Doe2's friends. This is evidence of an agreement to retaliate and, thus, interfere with the Plaintiff's advantageous relationship or contract, which is an intentional tortious act.

405. The wrongful acts include the harassment, threats and intimidation mentioned above in this Complaint and the job loss at the CBI and demotion at the DPD.

406. By the acts and means alleged above, the Defendants have caused harm to the Plaintiff in both his person and his property (his employment), as more fully described in paragraph 329 above, said paragraph incorporated herein as if fully set forth in this paragraph.

**WHEREFORE, the Plaintiff demands:**

f.  That judgment be entered in favor of the Plaintiff against all Defendants.
g.  That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
h.  That the Plaintiff be awarded punitive damages against the Defendants in their individual capacities.
i.  That the Plaintiff be awarded attorney's fees and costs of this litigation.
j.  Any other relief the court deems just and proper.

## COUNT VIII - 18 U.S.C. § 1964(c) - Civil RICO
### Plaintiff J. Jakuttis v. All Defendants EXCLUDING Town of Dracut

407. The Plaintiff reasserts and re-alleges the allegations contained in paragraphs 1-406 above, inclusive, and incorporates them herein by reference as if fully set forth herein.

408. By the acts and means alleged above and below, the Defendants (excluding the Town of Dracut) have violated 18 U.S.C. § 1962(c) (the Federal RICO statute) by being associated with an enterprise whose activities affect interstate commerce and conducting and participating both

directly and indirectly in the enterprise's affairs through a pattern of ongoing racketeering activity, knowing that the predicate actions taken were a violation of law.

409. The enterprises are one of or a combination of:

(A) an association-in-fact enterprise consisting of either (i) Defendant John Doe1, Defendant John Doe2, Defendant Chartrand, Defendant O'Hanlon, and DO3, or (ii) Defendant John Doe1, John Doe2, and DO3, and

(B) either one of the association-in-fact enterprises stated in parts (A) (i) or (ii) of this paragraph *AND* the Town of Dracut Police Department, as an association-in-fact between the Town of Dracut Police Department and either of (A)(i) or (A)(ii); and

(C) the Town of Dracut Police Department.

The enterprise or enterprises existed separate and apart from the alleged pattern of racketeering activity.

410. The purpose of the association-in-fact enterprises is to perpetuate the predicate acts of engaging in the unlawful distribution, sale, use, buying, handling, or otherwise dealing in a controlled substance (see 18 U.S.C. § 1961(A) and (D)), and/or to perpetuate, in perpetuity, the concealing, covering up, or otherwise preventing the further disclosure and/or investigation of said predicate acts, past, present or future, by the continued use and means of additional predicate acts, to wit, violations of 18 U.S.C. §§ 1512 and 1513.

411. There is a strong relationship among the members of the association-in-fact enterprise, as more fully described in this Complaint, but which is demonstrated, for example, by the strong friendship bond between John Doe1, John Doe2 and DO3, of which the Plaintiff knows as a fact, and which is demonstrated further by, among other things, Defendant John Doe2 calling the Plaintiff a "liar" with regard to the allegations against Doe1 and DO3, and that he (Doe2)

knows Doe1 and DO3 and exclaimed that that they wouldn't engage in illegal activity; the three phone/text calls or messages, one after the other, from Doe1, Doe2 and DO3 to the Plaintiff's friend chastising him and harassing and intimidating him for associating with the Plaintiff; CS's failing to inform Doe2 of the alleged illegal activity of Doe1 and DO3 because he knew of or believed that Doe1, Doe2 and DO3 were all friends; the intimidating tactics, goal and successful efforts on Doe2's part to get the Plaintiff fired from the position of CBI officer followed immediately with Doe1's successful effort to prevent the Plaintiff from returning as a detective on the DPD once fired from the DEA's CBI unit; Doe2 inviting Doe1 and DO3 to a lunch where the Plaintiff was present after Doe2 was ordered by Defendant O'Hanlon to stay away from Doe1 and DO3 even at lunch, said order coming after the alleged illegal controlled substance violations of Doe1 and DO3 were revealed by the Plaintiff.

412. One of the association-in-fact enterprises is comprised of, at a minimum, Doe1, Doe2 and DO3, but alternatively also includes Defendants Chartrand and O'Hanlon because of their actions and words, and because of the close working relationship between Doe1, Doe2, DO3, Chartrand and O'Hanlon.

413. This close relationship is evidenced by, among other things, Chartrand demoting the Plaintiff and preventing him from returning as a detective for the DPD with a stated reason that Defendant John Doe1 doesn't want the Plaintiff on the detective force, and that Chartrand didn't want to "kick sand in [Doe1's] face."

414. This close relationship is evidenced by, among other things, O'Hanlon removing the Plaintiff from his position as a member of the CBI unit and telling the Plaintiff that he is a "victim of circumstances, but something has to be done" and that he (O'Hanlon) doesn't know what Doe2

is capable of, and siding with Doe2 in Doe2's stated objective of getting the Plaintiff "kicked out of here."

415. The close relationship is also evidenced by the shared hostility toward the Plaintiff by the Defendants as demonstrated by the retaliatory employment actions taken against the Plaintiff and the harassing, intimidating, threatening and otherwise wrongful acts directed toward the Plaintiff and others associated with the Plaintiff.

416. The length of the association-in-fact is substantial, continuing, ongoing, and continues to this day for the purposes stated above, particularly the purpose of continuing the predicate acts prohibited by 18 U.S.C. §§ 1512 and 1513.

417. The association of Doe1, Doe2 and DO3 goes back many years, and at a minimum of ten years, and the association of those three plus Chartrand and O'Hanlon has gone on for at a minimum since January of 2015 when the information provided from CS was first revealed by the Plaintiff, and Chartrand and O'Hanlon then joined the association-in-fact at that point by acquiescing to and agreeing with Doe1's and Doe2's desire, goal, and conspiracy to retaliate against the Plaintiff in an effort to silence him and CS from continuing with or otherwise advancing the investigation into the alleged illegal activity of Doe1 and DO3

418. The concerted actions, efforts, goal and purpose of the enterprise and its members was to, among other things, silence the Plaintiff and any others in further communication or revelation about the alleged illegal activity because a continued investigation would not only bring possible repercussions against Doe1 and DO3 (and Doe2 if any illegal activity on his part is discovered), but could also possibly undermine any convictions or plea deals in any federal or state cases if it involved the undercover work or testimony of Doe1, Doe2 or DO3, possibly resulting in defense counsel in any of those cases attempting to reopen said cases.

419. The Defendants, John Doe1, John Doe2, DO3, Chartrand and O'Hanlon are engaged in a continuing scheme of open-ended continuity to cover-up and/or prevent the further disclosure and/or criminal investigation of alleged criminal activity of predicate acts under 18 U.S.C. § 1961(A) and (D).

420. The criminal activity itself, mentioned in the preceding paragraph, is a predicate act under 18 U.S.C. §§ 1961 (A), "dealing in a controlled substance . . ., which is chargeable under State law and punishable by imprisonment for more than one year;" and (D), "the felonious . . . receiving, concealment, buying, selling, or otherwise dealing in a controlled substance . . ., punishable under any law of the United States," allegedly perpetrated by Defendants John Doe1 and DO3.

421. The acts described in this Complaint are predicate acts under 18 U.S.C. § 1961 (A) because it involves the illegal dealing in, possession, purchase, use, or otherwise handling heroin which carries with it, under Massachusetts law, punishment by imprisonment for greater than one year. See G.L. c. 94C, § 34 (first offense, not more than two years).

422. The acts described in this Complaint are predicate acts under 18 U.S.C. § 1961 (D) because it involves the felonious receiving, concealment, buying, selling, or otherwise dealing in a controlled substance (heroin, cocaine and Fentanyl) which is punishable under the laws of the United States, to wit, 18 U.S.C. § 841 (a).

423. Among other things, Doe1 *distributed* Fentanyl, a Schedule II drug, to CS, in violation of 18 U.S.C. § 841 (a)[19], and CS suffered serious bodily injury (an overdose) and was taken by Doe1 to the hospital (see paragraphs 67-72 above).

---

[19] 18 U.S.C., § 841(a) describes unlawful acts to include: **(a) Unlawful acts**. Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally - (1) to manufacture, *distribute*, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance... (emphasis added).

424. "Distribution" is defined in 18 U.S.C. § 802 (11) as "to deliver... a controlled substance...."
The term "deliver" in the same section is defined as "the actual, constructive or attempted
transfer of a controlled substance. . ., whether or not there exists an agency relationship."

425. The Defendant, Doe1 did deliver and transfer the Fentanyl to CS who then suffered a severe
bodily injury as a result.

426. Penalties under 18 U.S.C. § 841 (b)(1)(c) for a violation of Subsection (a) mentioned above is
not more than 20 years, and if death or *serious bodily injury* results from the use of such
substance shall be sentenced to a term of imprisonment of not less than twenty years or more
than life. Thus, it meets the definition of "felonious" as required, and is not a misdemeanor.

427. "Serious bodily injury" includes an injury "which requires medical intervention, such as . . .
hospitalization. . .", which happened to CS with the Fentanyl overdose. See United States
Sentencing Commission Guidelines Manual, § 1B1.1, n.1(L).

428. The actual scheme to cover-up and/or prevent, thwart or halt the disclosure and/or
investigation of the alleged criminal activity was and is being accomplished by a predicate act
under 18 U.S.C. § 1961 (B): "any act which is indictable under any of the following provisions
of title 18, United States Code: ..., section 1512 (relating to tampering with a witness, victim, or
an informant), section 1513 (relating to retaliating against a witness, victim, or an informant)."

429. The predicate act of a violation of 18 U.S.C. § 1512(b)(3) is the knowing use of (i)
intimidation or threats, or (ii) corruptly persuading another person, or (iii) engaging in
misleading conduct toward another person, with the intent to hinder, delay, or prevent the
communication to a law enforcement officer of the United States of information relating to the
commission or possible commission of a Federal offense.

430. Defendant O'Hanlon and SA Willoughby are "law enforcement officers" as that term is defined in 18 U.S.C. § 1515, applicable to 18 U.S.C. § 1512 and 1513.

431. By the acts and means alleged above, the Defendants did in fact *intimidate and threaten* the Plaintiff, and thereby did hinder, delay and prevent the communication to a United States law enforcement officer of information relating to the commission or possible commission of a Federal offense because the Plaintiff would have continued with his efforts to inform Defendant O'Hanlon and other federal law enforcement officers of such information because the Plaintiff intended on giving information regarding the veracity of CS and the quality and accuracy of the information he had received from CS in the past, during undercover operations and CS's work as an informant, and also could provide additional information regarding the commission or possible commission of other federal offenses.

432. Further, the removal of the Plaintiff from the role as a CBI officer and detective for the DPD would make it difficult for CS to proceed with his testimony and information to the federal agents regarding the alleged illegal drug actions of John Doe1 and DO3 because the person CS trusted was the Plaintiff, thereby intimidating CS to be silent and causing the investigation to stagnate and stop in its tracks, which it did. This was a violation of 18 U.S.C. § 1512(b)(3).

433. Defendant John Doe2 also engaged in *misleading conduct* (as that term is defined in 18 U.S.C. § 1515) toward another (Defendant O'Hanlon), by knowingly making a false statement with the intent on hindering, preventing or delaying the communication to a federal law enforcement officer of the commission or possible commission of a federal offense when he (John Doe2), in an intimidating, threatening and harassing manner in a meeting at the CBI, sprang out of his chair and exclaimed that the Plaintiff was a "liar" with respect to threatening to get him fired, and at one meeting saying that John Doe1 and DO3 would not have engaged in the illegal

O'Hanlon and other federal law enforcement officers because the Plaintiff intended on giving information regarding the veracity of CS and the quality and accuracy of the information he had received from CS in the past during undercover operations and CS's work as an informant, and provide other information; further, the removal of the Plaintiff from the role as a CBI officer and detective for the DPD would make it difficult for CS to proceed with his testimony and information to the federal agents regarding the illegal drug actions of John Doe1 and DO3 because the one person CS trusted was the Plaintiff, thereby causing the investigation to stagnate and stop in its tracks, which it did. This was a violation of 18 U.S.C. § 1512(d).

438. Additionally, the Defendants violated 18 U.S.C. § 1512(b)(3) and (d) because two individuals have recently been following CS in a vehicle and on one occasion produced some kind of official looking badge and exhibited the same to CS and forced CS into the vehicle and placed a handgun in his mouth and threatened, intimidated and harassed him telling him not to "rat on cops." Although no direct evidence exists at this time, circumstantial evidence and logic leads to a reasonable inference that someone in the association-in-fact enterprise caused the threat and harassment of CS to occur for the purpose of covering-up or otherwise thwarting and hindering any criminal investigation of the activities of John Doe1 and DO3.

439. Approximately fifteen minutes prior to gun in the mouth incident mentioned above, John Doe2 called CS on his cell phone and said "Where are ya, what are you doing?" Not thinking anything of the question, CS told Doe2 who's house he was at, mentioning the location. The conversation did not last long. The men with the badges showed up shortly thereafter, threatening CS with a gun.

440. Because of his past work with CS, John Doe2 knows the location of the house that CS said he was at.

441. The predicate act of a violation of 18 U.S.C. § 1513(e) is knowingly, with the intent to retaliate, taking any action harmful to any person, _including interference with the lawful employment or livelihood_ of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense.

442. By the acts and means alleged above, the Defendants did in fact, knowingly with the intent to retaliate, take action harmful to the Plaintiff, including interference with his lawful employment or livelihood because the Plaintiff provided to a law enforcement officer truthful information relating to the commission or possible commission of a Federal offense. Said information was truthful in that the information that the Plaintiff provided to the law enforcement officers (the Lowell police officer on the undercover operation with the Plaintiff, Defendant John Doe2, and Defendant O'Hanlon) was what CS had told him regarding the alleged illegal actions of Doe1 and DO3. The Plaintiff was being truthful as to what CS had told him, was reasonable in his belief that the information provided by CS was truthful and accurate, and has no reason to believe that the information received from CS is not truthful and accurate.

443. Allegations of predicate acts sufficient to sustain a civil RICO claim need only be proved by a preponderance of the evidence, not beyond a reasonable doubt, and those predicate acts need not have resulted in any criminal conviction to be successfully alleged and proved.

444. Acts beyond the statute of limitations for criminal conviction purposes are admissible and sustainable as evidence of a predicate act for purposes of civil RICO violations.

445. But for disclosing the information that CS had given him, the Plaintiff would not have been removed from his position as a CBI officer or demoted to patrol officer and prevented from remaining a detective on the DPD, nor would he have suffered the outrageous harassment, retaliation, intimidation threats and other wrongful acts by the Defendants.

446. The intended targets of the scheme to cover-up and/or prevent, hinder or thwart the disclosure and/or criminal investigation of the predicate acts of criminal activity are anyone who would disclose any information regarding those predicate acts or who would encourage, promote, suggest, request or otherwise cause or prompt a criminal and/or administrative investigation of the same, and anyone associated with said target. Such targets include the Plaintiff, Joseph Jakuttis, CS (having a gun put in his mouth and told not to "rat on cops"), SA Willoughby (mentioned above while at the formal interviews of CS and BCS being intimidated and harassed by John Doe2 to prevent him from taking notes of the interview of CS), the friend of Plaintiff Jakuttis mentioned above (harassed and threatened for associating with Plaintiff Jakuttis, visiting him and being with him), and Officer N.L. (when harassed and interrogated by John Doe2 regarding the meeting in the parking lot between Plaintiff Jakuttis, Officer N.L. and Officer J.S.).

447. The threat and likelihood that the pattern and scheme will continue indefinitely into the future is because the harassment, intimidation, and threats continued from the beginning when the information of the predicate acts of criminal activity was first revealed by Plaintiff Jakuttis and continued beyond the date when he went out on medical leave due to the stress from the harassment, intimidation and retaliation, with the harassing phone call and/or text by defendants Doe1, Doe2 and DO3 to intimidate the Plaintiff's friend not to associate with him. It is also continuing and ongoing because of the current and continued prevention of the Plaintiff from working on the CBI unit or as a detective with the DPD.

448. There is nothing that would remotely suggest that the predicate act scheme will terminate when the Plaintiff returns to work, that is, that the harassment would not continue or that he would be allowed to resume work on the CBI unit or as a detective with the DPD.

449. The fact that the Plaintiff's position is currently as a patrol officer and continues to be that of

    patrol officer and is prevented from doing any work as a detective demonstrates a continuing

    predicate act under 18 U.S.C. § 1961(B) because it is a continuing violation of 18 U.S.C. §§

    1512 and 1513.

450. The activities of the association-in-fact enterprise affect interstate commerce.

451. The predicate act(s) allegedly committed by John Doe1 and DO3 mentioned above under 18

    U.S.C. §§ 1961(A) and (D) regarding controlled substances does, as a matter of law, affect

    interstate commerce.

452. The illegal dealing, use, sale, distribution, or otherwise handling of controlled substances is an

    act with affects interstate commerce regardless of whether such dealing, use, sale, distribution,

    or otherwise handling occurs strictly *intrastate* because in passing the Comprehensive Drug

    Abuse Prevention and Control Act of 1970 (The Controlled Substance Act, 21 U.S.C. § 801 et

    seq.), Congress made the following findings:  (A) Incidents of the traffic which are not an

    integral part of the interstate or foreign flow, such as manufacture, local distribution, and

    possession, nonetheless have a substantial and direct effect upon interstate commerce because

    (i) after manufacture, many controlled substances are transported in interstate commerce, (ii)

    controlled substances distributed locally usually have been transported in interstate commerce

    immediately before their distribution, and (iii) controlled substances possessed commonly flow

    through interstate commerce immediately prior to such possession; (B) Local distribution and

    possession of controlled substances contribute to swelling the interstate traffic in such

    substances; (C) Controlled substances manufactured and distributed intrastate cannot be

    differentiated from controlled substances manufactured and distributed interstate. Thus, it is not

    feasible to distinguish, in terms of controls, between controlled substances manufactured and

distributed interstate and controlled substances manufactured and distributed intrastate; (D) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic. See 21 U.S.C. § 801.

453. The predicate acts mentioned above under 18 U.S.C. § 1961(B) also affects interstate commerce because it caused harm to the business (income) of the Plaintiff, and the Plaintiff resides in New Hampshire and the income lost was from a payment source in another state (Massachusetts); the state of Massachusetts is affected by a decrease in taxes generated from the income lost; and the state of New Hampshire is affected by less disposable income for the Plaintiff, the majority of which would have been spent in New Hampshire.

454. The predicate acts in 18 U.S.C. § 1961(B) mentioned above further affect interstate commerce because those acts in violation of 18 U.S.C. §§ 1512 and 1513 were committed against a citizen and resident of New Hampshire by the association-in-fact enterprise members (the Defendants) who are citizens and residents of Massachusetts.

455. The predicate acts in 18 U.S.C. § 1961(B) mentioned above further affect interstate commerce because those acts are directly related to the predicate acts in Section 1961(A) and (D) (controlled substance violations) by furthering one of the purposes of the enterprise - the concealment of the illegal activities of the enterprise under said Section 1961(A) and (D) , whether past or future, and to preserve the  enterprise's existence by prevention of any disruption by law enforcement involvement or action.

456. The predicate acts committed by the Defendants are numerous, the last of which has been committed within ten years of a prior predicate act.

457. The predicate acts in violation of 18 U.S.C. § 1961(A) and (D) occurred within the last ten

   years, as did the predicate acts in violation of 18 U.S.C. § 1961(B) (i.e., violations of 18 U.S.C.

   §§ 1512 and 1513).

458. The earliest of the *known* predicate acts in violation of 18 U.S.C. § 1961(A) and (D), as

   described above in this Complaint, was after November 20, 2006, when the Plaintiff was

   injured, and the latest predicate act in violation of § 1961 (B) (i.e., violations of 18 U.S.C. §§

   1512 and 1513) is actually an ongoing and continuing violation by the refusal to allow the

   Plaintiff to be a detective on the DPD and remaining demoted to patrolman, and more

   specifically, predicate acts were done on the date that the Plaintiff was removed from the CBI

   unit by O'Hanlon on October 20, 2015 and then a short time thereafter when the Plaintiff was

   told by Defendant Chartrand that he could not be a detective.

459. The multitude of predicate acts as mentioned above (the retaliatory acts in violation of 18

   U.S.C. §§ 1512 and 1513) after the Plaintiff revealed the information provided by CS and the

   initial predicate acts in violation of § 1961(A) and (D) were thus all within 9 years of each other,

   and are of such a number and so related and continuing that there is clearly open-ended

   continuity of related predicate acts which caused harm to the business (income) of the Plaintiff

   and which is likely to continue.

460. The predicate acts of all Defendants by violations of 18 U.S.C. §§ 1512 and 1513 (retaliation,

   threats, intimidation, harassment, etc.) have become and are the normal way of doing business

   and/or conducting the affairs of the association-in-fact enterprise as it relates to the purpose of

   cover-up and prevention of investigations into the alleged unlawful acts of Doe1 and DO3 of

   controlled drug purchase, sale, use, or otherwise handling thereof, targeting the Plaintiff and his

association with anyone who would support the disclosure and investigation into the predicate acts of Doe1 and DO3.

461. At all times material to this Complaint the Defendants knew or should have known that their actions were illegal and would result in monetary harm to the Plaintiff by loss of income and ability to earn additional income.

462. Although there must be at least two predicate acts committed within ten years of each other, there is no requirement that each defendant himself has committed two predicate acts individually.

463. Retaliatory acts are inherently connected to the underlying wrongdoing exposed by the whistleblower, and, therefore, a relationship exists between the predicate acts under §1512 and 1513 (including the § 1513(e) predicate acts against the Plaintiff in retaliation for his whistleblowing and exercising his free speech rights) and the predicate acts involving the underlying cause for such retaliation, to wit, the predicate acts of violations of 18 U.S.C. § 1961 (A) and (D) in the alleged illegal dealing with or otherwise handling controlled substances in violation of Massachusetts and United States laws.

464. By the acts and means alleged above the Plaintiff has been harmed in his business (income) by his removal as a CBI officer, and said harm includes lost wages of at a minimum $1,000.00 per week from the DEA and DPD since his removal.

465. By the acts and means alleged above the Plaintiff has been harmed in his business (income) because as a patrolman he is limited as to the amount of overtime he can work.

466. The exact amount of damages has yet to be determined but are, at a minimum, $1,000.00 per week under the RICO claim, from the time he was removed as a CBI officer and, an additional

amount to be determined under the RICO claim for being prevented from continuing as a

detective with the DPD.

467. These damage amounts are only limited as claimed under the RICO statute and is not an

admission that that is the extent of the Plaintiff's injuries and, to the contrary, the Plaintiff

claims the injuries and damages in general and specifically are far greater as alleged under the

other claims in this Complaint.

468. The damages under the RICO claim, once determined, should be trebled in accordance with 18

U.S.C. § 1961(c).

469. The Plaintiff, if successful on the Civil Rico claim, is entitled to attorney's fees and costs.

**WHEREFORE, the Plaintiff demands:**

a. That judgment be entered in favor of the Plaintiff against all Defendants.
b. That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
c. That the Plaintiff be awarded treble damages against the Defendants in their individual capacities.
d. That the Plaintiff be awarded attorney's fees and costs of this litigation.
e. Any other relief the court deems just and proper.

### COUNT IX - 18 U.S.C. § 1964(d) - Civil RICO Conspiracy
### Plaintiff J. Jakuttis v. Defendants Chartrand and John Doe1
### and O'Hanlon and John Doe2

470. The Plaintiff reasserts and re-alleges the allegations contained in paragraphs 1-469 above,

inclusive, and incorporates them herein by reference as if fully set forth herein.

471. By the acts and means alleged above, the defendants have conspired to commit a RICO

violation, to wit, they have conspired to violate 18 U.S.C. § 1962(c).

472. Said conspiracy was by knowingly agreeing to facilitate others who operate the enterprise and

knowingly agreeing to facilitate a scheme which includes the operation of a RICO enterprise.

473. The RICO enterprise is as alleged above.

474. <u>Defendant O'Hanlon</u>: Defendant O'Hanlon agreed to facilitate the activities and purposes of the enterprise of silencing the Plaintiff and others from exposing the illegal acts of Defendant John Doe1 and DO3 by way of committing predicate acts made illegal by 18 U.S.C. § 1512 and 1513 as alleged above.

475. This was accomplished by discharging or removing the Plaintiff from his position as a CBI officer for the DEA.  But for Defendant John Doe2's harassment, intimidation, coercion, pressure, and other outrageous, heated, rage driven and aggressive outbursts toward the Plaintiff, often in front of Defendant O'Hanlon, O'Hanlon would not have removed the Plaintiff from his position as a CBI officer, and in doing so he was aiding and abetting, and otherwise facilitating the members of the enterprise and facilitating the scheme of the enterprise in fulfilling its purpose: to engaging predicate acts in violation of the RICO statute to cover-up the previous predicate acts of illegal drug activity.

476. It is clear that Defendant O'Hanlon was facilitating others in the unlawful obstruction of justice activities of the enterprise because he told the Plaintiff that he is a "victim of circumstances, but something has to be done" and that he "didn't know what [John Doe2] was capable of," and that his work ethic and productivity was "outstanding and excellent" and "was certainly not part of his decision" to fire the Plaintiff.  <u>See</u> paragraphs 190-192, above.

477. Defendant John Doe2 told the Plaintiff he was "going to the boss" and "getting you kicked out of here." <u>See</u> paragraph 142, above.

478. This was an agreement to comply with what Defendant John Doe2 demanded, requested, or otherwise expressed to O'Hanlon that the Plaintiff should be out of the CBI.

479. <u>Defendant Chartrand</u>: Defendant Chartrand agreed to facilitate the activities and purposes of the enterprise of silencing the Plaintiff and others from exposing the illegal acts of Defendant John Doe1 and DO3 by way of committing predicate acts made illegal by 18 U.S.C. § 1512 and 1513 as alleged above.

480. This was accomplished by preventing the Plaintiff from resuming his duties as a detective on the DPD after he was removed as a CBI agent. But for Defendant John Doe1's open hostility toward the Plaintiff (because he revealed what CS had told him regarding the alleged illegal drug activity), Defendant Chartrand would not have prevented the Plaintiff from continuing as a detective for the DPD, and in doing so he was aiding and abetting, and otherwise facilitating the members of the enterprise and facilitating the scheme of the enterprise in fulfilling its purpose: to engaging predicate acts in violation of the RICO statute to cover-up the previous predicate acts of illegal drug activity.

481. It is clear that Defendant Chartrand was facilitating others in the unlawful obstruction of justice activities of the enterprise because he told the Plaintiff that he [John Doe1] "doesn't want you there" [in the detective unit of the DPD] and that "I can't kick sand in his face." See paragraphs 207-208, above.

482. The conspiratory actions of Defendants Chartrand and O'Hanlon with Doe1 and Doe 2 in preventing the Plaintiff from returning as a detective for the DPD and removing him from the CBI unit, respectively, were both predicate acts themselves under 18 U.S.C. § 1512 and 1513, as articulated and alleged previously, and agreeing to engage in such actions actually and proximately caused harm to the Plaintiff though those predicate acts.

**WHEREFORE, the Plaintiff demands**:

f.  That judgment be entered in favor of the Plaintiff against all Defendants.
g.  That the Plaintiff be awarded compensatory damages in an amount to be determined by the jury.
h.  That the Plaintiff be awarded treble damages against the Defendants in their individual capacities.
i.  That the Plaintiff be awarded attorney's fees and costs of this litigation.
j.  Any other relief the court deems just and proper.


## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS


Respectfully submitted, Plaintiff,
Joseph Jakuttis, by his attorney,

December _01_, 2016

Laurence E. Sweeney, Esq.
BBO # 559208
9 Lynn Ave.
North Chelmsford, MA 01863
Tel: 978-884-2140
Fax: 978-418-8255
Email: lsweeneyrph@comcast.net